### CARRIER & HARRIS v. DORRANCE.

1. A bailee for hire is responsible only for injuries arising from that degree of negligence which occurs in the absence of ordinary care; and the burden of proving negligence is upon the plaintiff.
2. When non-suits are proper.
3. In action by bailor against bailee for damages for the death of a horse hired, the testimony showed no negligence by defendant under the circumstances surrounding him, and the Circuit judge therefore erred in refusing defendant's motion for non-suit.

---

Before PRESSLEY, J., Greenville, July, 1882.

This was an action by Carrier & Harris against John M. Dorrance. The opinion states the case.

*Mr. Julius H. Heyward,* for appellant.

*Messrs. M. F. Ansel* and *Edward Craft,* contra, on the question of non-suit, cited 3 *S. C.* 9, 411; 6 *Id.* 83; 7 *Id.* 144; 170; also, 2 *Kent* 763; 1 *Add. Torts* 498, *note* 657; 3 *Wait Ac. & Def.* 615; 31 *Geo.* 348; 3 *McC.* 547; 1 *Bailey* 358; 2 *Spears* 495; 5 *E. C. L.* 437.

March 10th, 1883. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The plaintiffs, respondents, keeping a livery stable in Greenville, in May, 1881, hired to the defendant a coach and team of four horses, for a pleasure trip to Piedmont, a distance of twelve miles, and to return the

same day. The party left the city in the morning and returned in the afternoon, having left one of the horses behind, about seven miles, sick. During the night of the same day this horse was brought to the stable quite sick, and died early the next morning. This action was brought to recover her value. The other three horses returned in good condition.

After plaintiffs' testimony the defendant moved for a non-suit, which was refused. The defendant requested the judge to charge : " That if the plaintiffs, by their conduct, contributed at all to the accident, or if, by proper care and attention on the part of the plaintiffs, the death of the horse might have been prevented, and the plaintiffs failed to bestow this care and attention upon it, the defendant is not liable."

The judge declined to charge this in the language requested, but did charge as follows : " If the jury believed that the death of the mare was caused by her being driven hard after defendant knew that she was sick, and, further, if they believed it was not proper care to drive her while in that condition, then defendant was responsible for her full value. In that case no question of contributory negligence by the plaintiff would be submitted to them because he was not present, and they need not consider the question of whether the driver was employed by Harris or by defendant; as the latter had taken the mare from the care of the driver and placed her in the hands of his own servant, he alone was responsible for the consequences of that act if it was negligence. Further, if the jury believed that plaintiff, by proper care, could have saved the life of the mare after she was delivered to him, then defendant was not responsible for her full value, but he would still be responsible for such injury as was inflicted upon her by driving her whilst sick, if the jury believed it involved loss of service and impaired constitution, which proper care by the plaintiff could not have averted."

The jury found for the plaintiffs $100. The defendant appealed : 1. " Because his Honor erred in refusing to charge as requested. 2. Because his Honor charged in respect to matter of fact. 3. Because it is submitted the non-suit should have been granted upon the ground that the proof of negligence on the part of the defendant was not sufficient."

This case, and the questions raised, involve the law of bailments. It will not be necessary, however, to discuss that doctrine generally. We need only examine the law of the class to which the case belongs. This class is what is known in the books as *locatio rei*, bailment for hire. Mr. Chitty says that such a bailee is bound to use only an ordinary degree of care. 1 *Chit. Cont.* (11*th ed.*) 679. He is responsible for injuries arising from that degree of negligence which occurs in the absence of ordinary care, such care as is ordinarily bestowed by parties in the preservation of property.

As a contract for hire is supposed to be of mutual benefit, both to the bailor and bailee, the bailee in such case is not held to that strict accountability which appertains to a mere borrower who obtains possession for his own benefit, and without reward to the lender. The burden of proving the absence of this ordinary care, and the presence of that negligence, which is the result, and which makes the bailee liable, is ordinarily upon the bailor or plaintiff. 1 *Chit. Cont.* 680, *note; Story Bail.,* § 410; *Runyan* v. *Caldwell,* 7 *Humph.* 134; *Schmidt* v. *Blood,* 9 *Wend.* 268; *Platt* v. *Hibbard,* 7 *Cow.* 500; *Foote* v. *Storrs,* 2 *Barb.* 326; *Clark* v. *Spence,* 10 *Watts* 335. This is the general doctrine in reference to this species of bailment.

Next, as to non-suits. It is well settled that a non-suit is proper only where there is a total failure of testimony by the plaintiff, either as to his whole case, or to some material and essential part thereof. It is also well understood that non-suits are not favored, and the practice of ordering a non-suit *in invitum* should be pursued with caution. *Redding* v. *Railroad Co.,* 3 *S. C.* 9; *Boykin* v. *Watts,* 6 *S. C.* 83; *Holley* v. *Walker,* 7 *S. C.* 144; but it is also settled that where there is a total failure of evidence, the defendant has the legal right to stop further proceedings, by motion for non-suit.

Now, let the motion for non-suit below be subjected to the test of the principles announced above, and what is the result? The plaintiffs, in order to get the jury, were bound to offer some proof as to the negligence of the defendant, or as to the absence of that ordinary care which would amount to negligence in a case like this. Did they do this? Upon a careful examination

of the testimony found reported in the brief, we think it will be apparent that they did not. The facts brought out by their testimony were simply that the coach and team were hired to the defendant, for a trip of pleasure to Piedmont; that this trip was to be made during the day; that it was made; that three of the horses were returned in the afternoon, sound and in good condition; that the fourth was left behind sick after reaching within some seven miles of the city of Greenville; that when the horse was found sick, the defendant took her from the coach and turned her over to one Earle, to be driven forward, hitched to a basket wagon, with instructions to drive her slowly and carefully on to the city, but if she got no better, or it became necessary, to leave her on the way at the house of Judge Cleveland, a gentleman who lived on the roadside; that she reached Greenville that night about twelve o'clock, and died next morning; one witness stating that he would not drive a sick horse eight or ten miles if it could possibly be avoided, but had seen horses get well after being thus driven; another stating that he did not think it safe to drive a sick horse, but that he would prefer to get him home if he could, because he could be better treated; that there were no drug stores along the road, although one at Piedmont.

This was the whole testimony of the plaintiffs, upon the close of which the motion for non-suit was made. We do not see anything in all this bearing directly upon the question of negligence, the burden of proving which was upon the plaintiffs. There was not a particle of testimony tending to show that the sickness of the mare was caused by any act of the defendant, such as hard driving, inattention to watering, imprudent feeding, or anything on his part which might have caused this sickness. There was no evidence directed to the point that there was the want of ordinary care by the defendant in directing the mare to be driven slowly and carefully to Greenville after he found that she had taken sick within seven or eight miles of the city, or that he failed to bestow such care himself before leaving her. True, two of the witnesses said, generally, that it was unsafe to drive a sick horse eight or ten miles, but, yet, it was better to get such horse home. These were general opinions, and seemed

C

to have no special reference to the case before the court and the conduct of defendant.

The question was as to his negligence under the circumstances surrounding him; whether ordinary care required him to do more than he did do. The horse took sick on his hands within a few miles of the stable from which he had hired it. He was not a farrier, had no medicine, and, perhaps, would not have known how to use it if he had been thus provided. The sun was about an hour high; he concluded that it was best to get her to the stable and subject her to the treatment of those who knew best what to do, and he adopted that course.

These were the facts, but whether this was negligent or prudent conduct there was no testimony; and, in the absence of such testimony, there was nothing to submit to the jury upon the main and important question, to wit, the question of negligence and ordinary care. We think, therefore, that the nonsuit should have been granted, and now, under the authority of *Sampson & Wyatt* v. *Singer Manufacturing Co.*, 5 *S. C.* 465, and *Willis* v. *Knox*, 5 *S. C.* 476, a new trial should be had. It will be unnecessary to discuss the charge of the judge.

It is the judgment of this court that the judgment of the Circuit Court be reversed, to the end that a new trial be had.